**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 12 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MANUEL ARMENTA-CASTRO,

Defendant-Appellant.

No. 99-4155

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 98-CR-500-W)

---

**Submitted on the briefs:**

Paul M. Warner, United States Attorney, Mark K. Vincent, Assistant United States Attorney, Salt Lake City, Utah, for Appellee.

Larry E. Hazen, Attorney, Salt Lake City, Utah, for Appellant.

---

Before **MURPHY, McKAY,** and **ANDERSON,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

Manuel Armenta-Castro pleaded guilty in federal district court to illegally reentering the United States after a prior deportation. *See* 8 U.S.C. § 1326(a). As part of the plea agreement, he admitted his prior deportation was subsequent to an aggravated-felony conviction and that he was, therefore, subject to the enhanced penalties set out in § 1326(b)(2)(B). Armenta-Castro requested that the district court depart downward from the sentencing range set out in the United States Sentencing Guidelines ("U.S.S.G.") on the basis, *inter alia*, of a sentencing disparity that exists among federal districts with respect to illegal reentry cases. In particular, Armenta-Castro asserted that federal prosecutors in several districts were allowing defendants to plead guilty to lesser charges, namely improper entry charges under 8 U.S.C. § 1325(a), in exchange for a guilty plea, while the United States Attorney in Utah "vigorously prosecutes such offenses and exacts maximum punishment." The district court rejected Armenta-Castro's request, holding that it lacked the power to depart on this basis. Exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291,[1] this court **affirms**.[2]

---

[1]This is one of those "rare" cases in which we have jurisdiction to review a district court's refusal to depart downward. *See United States v. Castillo*, 140 F.3d 874, 888 (10th Cir. 1998). The district court specifically concluded that inter-district sentencing disparity like that at issue in this case was not a legally valid basis for departure. *See id.* ("Where, because of a purely legal conclusion, a district court refuses even to consider whether a defendant's circumstances may support a departure, the Sentencing Reform Act gives us the power to review.").

[2]After examining the briefs and appellate record, this panel determined unanimously that oral argument would not materially assist the determination of

This case presents the court with the following narrow question: does the existence of sentencing disparities as to illegal reentry cases among the various federal districts, where such disparities arise from varying charging and plea-bargaining policies of the individual United States Attorneys, provide an appropriate basis for a downward departure at sentencing?[3] In accord with the only two circuits to have considered this issue, we answer the question in the negative. *See United States v. Banuelos-Rodriguez*, 215 F.3d 969, 978 (9th Cir. 2000) (*en banc*) ("We hold that a district court may not grant a downward departure from an otherwise applicable Guideline sentencing range on the ground that, had the defendant been prosecuted in another federal district, the [d]efendant may have benefited from the charging or plea-bargaining policies of the United States Attorney in that district."); *United States v. Bonnet-Grullon*, 212 F.3d 693, 710 (2d Cir. 2000) ("[T]he district court correctly ruled that it lacked the authority to grant downward departures solely in order to match lower sentences

---

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Accordingly, we entered an order on June 23, 2000, providing that the case would be submitted without oral argument.

[3]To be clear, Armenta-Castro does not contest that he violated § 1326(a) and was eligible for the enhanced penalties set out in § 1326(b)(2)(B). Nor does he contest the district court's calculation of his sentencing range pursuant to the Sentencing Guidelines. Instead, his sole assertion on appeal is that the district court erred as a matter of law in determining that it was without power to depart on the basis of inter-district inconsistencies in the charging and plea bargaining of § 1326 cases.

imposed in the Southern District of California as a result of the exercise of prosecutorial discretion in that district to bring charges under § 1325(a) instead of § 1326.").

Armenta-Castro notes that a primary goal of the Sentencing Reform Act of 1984 was to reduce "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 28 U.S.C. § 991(b)(1)(B). In order to achieve that goal, Armenta-Castro asserts that district courts must be empowered to rectify sentencing disparities that arise solely because of the disparate charging and plea bargaining practices employed by the various United States Attorneys in the context of illegal reentry prosecutions. Furthermore, Armenta-Castro asserts that there is nothing in either the Sentencing Guidelines or the policy statements and official commentary by the Sentencing Commission precluding a downward departure in these circumstances.

In contrast to Armenta-Castro's assertions, this court concludes that the governing provisions of the United States Code and the Sentencing Guidelines categorically proscribe the consideration of sentencing disparities flowing from the exercise of prosecutorial discretion in charging and plea bargaining practices. *See Bonnet-Grullon*, 212 F.3d at 698-99, 707. "By statute, a district court may not depart from an applicable Guideline range 'unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not

adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *Banuelos-Rodriguez*, 215 F.3d at 973 (*quoting* 18 U.S.C. § 3553(b)) . Like the Ninth Circuit, this court fails to see how the decision of an out-of-district federal prosecutor to pursue a given prosecutorial strategy in dealing with § 1326 violators in that district can constitute a "mitigating circumstance" as to Armenta-Castro or his crime. *See id.*; *see also Bonnet-Grullon*, 212 F.3d at 706 ("[T]he departure inquiry must focus on the facts of the case in which the departure is sought."). The discretionary actions of out-of-district prosecutors simply do not speak to Armenta-Castro's individual culpability; they do not elucidate his particular personal history or the circumstances surrounding his commission of the crime in any way. *See* Black's Law Dictionary 1002 (6th ed. 1990) (defining "mitigating circumstances" as circumstances which "do not constitute a justification or excuse for the offense in question, but which, in fairness and mercy, may be considered as extenuating or reducing the degree of *moral culpability*" (emphasis added)). Because the actions of out-of-district federal prosecutors do not bear on Armenta-Castro's moral culpability, those actions cannot amount to mitigating circumstances allowing the district court to depart downward. *See* 18 U.S.C. § 3553(b); *see also* U.S.S.G. § 5K2.0 Commentary ("In the absence of a characteristic or circumstance that distinguishes a case as

-5-

sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guidelines range is not authorized.").

Even assuming that inter-district policy differences in the handling of § 1326 prosecutions could qualify as mitigating circumstances technically empowering the district court to depart downward under 18 U.S.C. § 3553(b), this court agrees with the Second and Ninth Circuits that a departure is still prohibited under the Sentencing Guidelines themselves. *See Banuelos-Rodriguez*, 215 F.3d at 973-76; *Bonnet-Grullon*, 212 F.3d at 706-09. Without repeating at length the helpful and thorough analysis contained in those two opinions, this court simply notes that the heartland analysis set out in the Sentencing Guidelines is highly case and fact specific, comparing specifically "the particular facts of the case [at hand] against the class of cases typically within that guideline." *Bonnet-Grullon*, 212 F.3d at 700; *see also Banuelos-Rodriguez*, 215 F.3d at 973-74. Like the Second and Ninth Circuits, we do not believe that the actions of the various United States Attorneys around the country in formulating prosecution strategies to deal with the heavy caseload of illegal reentry cases adds anything at all to a heartland analysis. *See Banuelos-Rodriguez*, 215 F.3d at 973-74; *Bonnet-Grullon*, 212 F.3d at 698-701, 706-07. Furthermore, interjection of this issue into sentencing proceedings would mandate cumbersome and involved evidentiary hearings in every case, *see Banuelos-Rodriguez*, 215 F.3d at 974, an approach

clearly at odds with the Supreme Court's view of departure proceedings.  *See*

*Koon v. United States*, 518 U.S. 81, 98-99 (1996).  The ultimate result would be

to turn on its head the Sentencing Guidelines mandate that departures be "highly

infrequent."  *See Banuelos-Rodriguez*, 215 F.3d at 974 (*quoting* U.S.S.G. Ch.1,

pt. A, subpt. 4(b)).

As a final matter, this court notes that the Sentencing Commission

specifically contemplated the impact of plea bargaining and charging practices of

federal prosecutors in drafting the Guidelines and declined to implement any

major changes in the process despite the arguments of some commentators that

the Sentencing Guidelines "failed to control and limit plea agreements [and thus]

leave untouched a 'loophole' large enough to undo the good that sentencing

guidelines would bring."  U.S.S.G. Ch.1, pt. A, subpt. 4(c).  Instead, the

Sentencing Commission promulgated a policy statement providing that although a

court may reject a plea agreement dismissing certain charges if the remaining

charges do not reflect the seriousness of the actual offense behavior, the

Sentencing Guidelines do "not authorize judges to intrude upon the charging

discretion of the prosecutor."  *See id.* § 6B1.2 & Commentary.[4]

---

[4]This court recognizes that the Sentencing Commission has indicated that a "sentencing court may control any inappropriate manipulation of the indictment through use of its departure power."  U.S.S.G. Ch. 1. pt. A, subpt. 4(a).  This language arises, however, in the Sentencing Commission's discussion of its decision to implement a "charge offense" system instead of a "real offense"

A holistic reading of the Sentencing Guidelines clearly demonstrates that

the [Sentencing] Commission considered the effects that the exercise of prosecutorial discretion has on the uniformity of sentences. The Guidelines allow sentencing courts to take certain limited actions in narrow circumstances to address a prosecutor's inappropriate exercise of discretion. In all other circumstances, the Guidelines do not give courts the authority to interfere with a prosecutor's exercise of discretion in charging and plea bargaining by departing from an applicable Guidelines range.

*Banuelos-Rodriguez*, 215 F.3d at 975; *see also United States v. Thomas*, 884 F.2d 540, 544 (10th Cir. 1989) ("Thomas contends further that, under the guidelines, the prosecutor can control the length of a defendant's sentence by management of the charging of offenses and plea bargaining practices. Thomas does not show, however, how his rights were violated in this way."). Because Armenta-Castro has not argued "bad faith or discrimination on the part of the prosecutor at any time during the criminal proceedings," *Thomas*, 884 F.2d at 544, the Sentencing

---

system. In so choosing, the Sentencing Commission recognized that one problem with a "charge offense" system is "the potential it affords prosecutors to influence sentences by increasing or decreasing the number of counts in an indictment." *Id.* Nevertheless, the Sentencing Commission recognized that

the defendant's actual conduct (that which the prosecutor can prove in court) imposes a natural limit upon the prosecutor's ability to increase a defendant's sentence. Moreover, the Commission has written its rules for the treatment of multicount convictions with an eye toward eliminating unfair treatment that might flow from count manipulation.

*Id.* It is abundantly clear that the Sentencing Commission's policy statements regarding count manipulation by prosecutors is not implicated in this case. There is absolutely no indication that the prosecutor in this case structured the charges against Armenta-Castro in an effort to manipulate the sentencing guidelines.

Guidelines prohibit the district court from interfering with the prosecutor's discretionary charging and plea bargaining decisions via the avenue of departure.[5]

The judgment of the United States District Court for the District of Utah that it is without power to depart from the otherwise applicable sentencing range based on inter-district differences in the charging and plea bargaining decisions of the various United States Attorneys is hereby **AFFIRMED**.

---

[5]As noted by the Ninth Circuit,
the Guidelines have sought to achieve uniformity in sentencing only by attempting to equalize the sentences of those who have engaged in similar criminal conduct, have similar criminal backgrounds, *and* have been convicted of the same offense. The uniformity the Guidelines sought was designed to come from the specific provisions of the Guidelines itself, not from giving judges a broad discretion to ignore the Guidelines and increase [or decrease] sentences based on extraneous factors such as the punishment meted out to those convicted of other offenses.

*United States v. Banuelos-Rodriguez*, 215 F.3d 969, 974 (9th Cir. 2000) (*en banc*).