**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 19, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JESUS SALAZAR - ALPIZAR,

Defendant - Appellant.

No. 05-1368

(D. Colorado)

(D.C. No. 05-CR-44-F)

**ORDER AND JUDGMENT***

Before **HENRY**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

Jesus Salazar-Alpizar, a native and citizen of Mexico, pled guilty to one count of illegal reentry by an alien previously deported subsequent to an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). He was sentenced to forty-six months' imprisonment. He appeals his sentence, which we affirm.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**BACKGROUND**

On December 22, 2004, Salazar-Alpizar was arrested in Adams County, Colorado, on charges of having failed to register as a sex offender. Immigration authorities were notified of his illegal status and he was arrested on the instant offense.

Salazar-Alpizar pled guilty pursuant to a plea agreement. The plea agreement included a tentative calculation of Salazar-Alpizar's total adjusted offense level under the United States Sentencing Commission, Guidelines Manual (2004) ("USSG"), as 21, his criminal history as category II and a resultant advisory sentencing range of forty-one to fifty-one months. The United States Probation Office prepared a presentence report ("PSR"), which concurred with the plea agreement's calculation of Salazar-Alpizar's offense level, but determined that his criminal history category was III. This yielded an advisory Guidelines range of forty-six to fifty-seven months. The PSR recommended a forty-six-month sentence.

Salazar-Alpizar filed a response to the PSR, in which he stated that he did not object to the Guideline calculations, but that he "believe[d] that 18 U.S.C. § 3553 mandates a sentence below that requested by the Probation Department." Resp. & Objections at 1, Addendum to PSR, R. Vol. IV. He further argued that a below-Guidelines sentence of twenty-four months was appropriate for three reasons: (1) 18 U.S.C. § 3553(a)(1), which requires the court to consider the

nature and circumstances of the offense and the history and characteristics of the defendant, suggests a lesser sentence because Salazar-Alpizar "returned to [the United States] in order to provide financial support to his family" and his latest employer stated Salazar-Alpizar has a "great work ethic," Resp. & Objections at 2, Addendum to PSR, R. Vol. IV; (2) his prior aggravated felony conviction for attempted lewd and lascivious conduct unjustly increased both his offense level and his criminal history and occurred nearly ten years ago; and (3) 18 U.S.C. § 3553(a)(6), which includes as a sentencing factor "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," suggests a lesser sentence in order to minimize sentencing disparities caused by the existence of "fast-track" programs in other federal districts but not in Colorado.[1]

The government responded to Salazar-Alpizar's request for a below-Guidelines sentence, arguing that (1) the fact that he was working to support his family was irrelevant to his sentence calculation, particularly in light of the fact that his prior aggravated felony conviction made him ineligible to be in the United States for any reason; (2) his ten-year-old aggravated felony conviction is dwarfed by his subsequent criminal convictions and pending charges, which led to a criminal history category of III; and (3) his fast-track sentencing disparities

---

[1]Fast-track programs permit lower sentences for illegal reentry defendants in certain circumstances.

argument was unavailing because "when Congress approved of the fast-track programs and granted the Attorney General the power to authorize them, it decided that these programs did not create the unwarranted sentencing disparities that Congress had prohibited previously under [18 U.S.C. §] 3553(a)(6)." Government's Resp. at 3 n.1, Addendum to PSR, R. Vol. IV.

At sentencing, other information about Salazar-Alpizar was introduced, including the fact that he had been in the United States since he was seventeen; he had held a job for the past five years and had a positive letter from his employer; he had been formally deported twice previously, in 1998 and 2000, and had voluntarily returned to Mexico once, in 1999; he had five prior convictions (the 1996 aggravated felony conviction for attempted lewd and lascivious conduct, two driving-under-the-influence-of-alcohol convictions, one third-degree assault and domestic violence conviction involving a girlfriend, and one careless driving conviction); and he faced a pending charge of failure to register as a sex offender.

At the conclusion of the sentencing hearing, the district court adopted the factual findings and Guideline applications of the PSR and imposed a sentence of forty-six months. Explaining its reasoning, the court stated that "[t]he sexual misconduct [involving] an under-age person is troubling, as well as [his] failure . . . to register as a sex offender . . . and even though the offense is somewhat removed in time, it is still a serious factor that I need to consider." Tr. of Sentencing at 34, R. Vol. III. Additionally, "[t]he fact that there have been other

crimes committed that put the public at risk, and also one involving a crime of violence with respect to a girlfriend, is also troubling." Id.

With respect to the fast-track disparity issue, the district court concluded that this circuit's decision in United States v. Armenta-Castro, 227 F.3d 1255 (10th Cir. 2000), holding that the then-mandatory Guidelines did not allow departures based on fast-track disparities, "does have some . . . lingering vitality" after United States v. Booker, 543 U.S. 220 (2005), which held that the Guidelines are no longer mandatory. Tr. of Sentencing at 34, R. Vol. III. Nonetheless, the court noted it was troubled by the impact of fast-track programs on the "consistency and uniformity of sentencing around the country." Id. at 35. The court emphasized, however, that it was "studying these particular factors, this individual's personal characteristics," and concluded "that [Salazar-Alpizar] should have been exceedingly careful being a non-citizen in this country. Yet, for whatever reasons, he was unwilling or unable to live an exemplary life while living here, notwithstanding a laudable work history and the respect of his employer and, apparently, the love of his family." Id.

Salazar-Alpizar appeals his sentence, arguing (1) "that the district court erred in believing it was prohibited from giving him a non-Guideline sentence based on fast-track disparity, and that this error was not harmless," and (2) "that his sentence is unreasonable." Appellant's Reply Br. at 1.

## DISCUSSION

As indicated, following the Supreme Court's decision in Booker, the Guidelines are advisory rather than mandatory. Nonetheless, because courts are required to "consider" the properly-calculated Guidelines sentencing range, United States v. Gonzalez-Huerta, 403 F.3d 727, 748-49 (10th Cir.) (en banc) (internal quotation omitted), cert. denied, 126 S. Ct. 495 (2005), we continue to review the sentencing court's factual findings under the Guidelines for clear error and its legal determinations de novo. United States v. Serrata, 425 F.3d 886, 906 (10th Cir. 2005). We review for reasonableness the ultimate sentence imposed, Booker, 543 U.S. at 261-62 (Breyer, J.) "guided by the factors set forth in 18 U.S.C. § 3553(a)." United States v. Kristl, 437 F.3d 1050, 1053 (10th Cir. 2006) (per curiam).

### I. Fast-track disparities

Fast-track programs were originally confined largely to states bordering Mexico, where federal prosecutors were "faced with increasing numbers of illegal reentry and other immigration cases." United States v. Morales-Chaires, 430 F.3d 1124, 1127 (10th Cir. 2005). Although they vary as to their particulars, these programs generally permit "defendants accused of certain immigration offenses [to] plead guilty early in the process and waive their rights to file certain motions and to appeal, in exchange for a shorter sentence." Id. The shorter sentence is

typically "accomplished either by charge-bargaining or by promising to recommend a downward departure at sentencing." Id.

Congress endorsed the concept of fast-tracking in 2003, enacting the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650 (2003) (codified in scattered sections of 18, 28 and 42 U.S.C.). The Act directed the United States Sentencing Commission to "promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." 117 Stat. at 675. Accordingly, the Sentencing Commission added a new Guidelines provision, effective October 23, 2003, which authorized a four-level departure. See USSG §5K3.1 (authorizing a downward departure "not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides").[2] At

_____

[2]Additionally, "on September 22, 2003, then-Attorney General John Ashcroft issued a memorandum . . . explaining the circumstances under which he would 'authorize[]' a fast-track program." United States v. Martinez-Flores, 428 F.3d 22, 25 (1st Cir. 2005), cert. denied, 126 S. Ct. 1449 (2006). The memorandum stated that a district seeking authorization of fast-track programs must demonstrate that it "confronts an exceptionally large number of a specific class of offenses within the district" or that it "confronts some other exceptional local circumstance with respect to a specific class of cases that justifies expedited disposition." Memorandum from Attorney General John Ashcroft Setting Forth Justice Department's "Fast-Track" Policies, 16 Fed. Sent. R. 134 (Sept. 22, 2003).

(continued...)

the time Salazar-Alpizar was sentenced, a number of districts had fast-track programs, but Colorado did not. Salazar-Alpizar argues that, had he been able to take advantage of a fast-track program, his sentence would have been shorter than the forty-six-month sentence he received in this case. Thus, he argues the court here should have reduced his sentence to reflect the fact that defendants in fast-track programs receive shorter sentences.

Salazar-Alpizar asserts that the district court "erroneously concluded that it was bound by this Court's decision in Armenta-Castro not to vary from the Guidelines based on fast-track sentencing disparities." Appellant's Op. Br. at 9-

[2](...continued)
The memorandum further provided that "any [fast-track] program in existence on the date of this Memorandum may not be continued after October 27, 2003, unless a fast-track proposal has been submitted and approved." Id.

On October 29, 2004, Deputy Attorney General James B. Comey authorized thirteen fast-track programs, including some in districts which do not border Mexico. Both parties agree that there are a number of other districts operating fast-track programs which have not been specifically authorized by the Attorney General. Salazar-Alpizar contends that any and all disparities created by the existence of fast-track programs in some districts but not in others are unwarranted. He further argues, however, that even if one were to concede that disparities caused by authorized fast-track programs are not unwarranted, those caused by unauthorized fast-track programs are clearly unwarranted: "even if the disparities created by fast-track programs approved by the Attorney General could be considered warranted if they operated within the bounds of Congressional approval . . . that says nothing about the disparities created by the programs that operate beyond the scope of Congressional approval or those that operate unofficially with no Congressional sanction whatsoever." Appellant's Reply Br. at 12.

In light of our conclusion that the district court correctly determined that the existence of fast-track disparities was simply a factor in its calculation of Salazar-Alpizar's sentence, we need not consider further any argument concerning authorized vs. unauthorized fast-track programs.

10.  In Armenta-Castro, a case decided prior to Booker, we held that the existence of sentencing disparities caused by fast-track programs in some districts did not provide an appropriate basis for a downward departure from the then-mandatory Guidelines.  Salazar-Alpizar argues that Booker, which held the Guidelines are only advisory, abrogated Armenta-Castro, but that the district court failed to recognize that abrogation when it noted that Armenta-Castro "does have some application, lingering vitality since . . . Booker."  Tr. of Sentencing Hr'g at 34, R. Vol. III.  We disagree.

It is clear from a review of the entire transcript of Salazar-Alpizar's sentencing hearing that the district court considered whether the disparities caused by the existence of fast-track programs in certain districts should cause the court to sentence Salazar-Alpizar below the advisory Guideline range.  Indeed, the court indicated it was "troubled by the . . . fact that other districts have more [illegal reentry] criminality . . . than this district, [yet] . . . lesser sentence[s] [are] applied to other people, because  . . . one major purpose of the sentencing guidelines is consistency and uniformity of sentencing around the country."  Id. at 34-35.  However, based upon the "particular factors [of § 3553(a), including], this individual's personal characteristics" the court determined that a sentence within the Guideline range was appropriate.  Merely noting the "lingering vitality" of Armenta-Castro is far different from considering it binding, and the court's reasoning indicated that it sentenced Salazar-Alpizar on the basis of its evaluation

of him and his conduct, not because it felt bound by <u>Armenta-Castro</u>.[3]  We

therefore conclude that the district court committed no error in its analysis of the

relevance of fast-track disparities.

## II.  Reasonableness of sentence

Salazar-Alpizar's remaining argument is that his forty-six-month sentence

is unreasonable.  In particular, he argues the unwarranted disparities caused by

fast-track sentencing rendered the sentence unreasonable.  As indicated, after

<u>Booker</u>, we review sentences for reasonableness.  We have recently explained

how we conduct that reasonableness review.  We have joined several other

circuits in concluding that "a sentence that is properly calculated under the

Guidelines is entitled to a rebuttable presumption of reasonableness."  <u>Kristl</u>, 437

F.3d at 1054.  Accordingly, when conducting reasonableness review of a sentence

imposed post-<u>Booker</u>, we employ a "two-step approach[,] . . . [f]irst . . .

determin[ing] whether the district court considered the applicable Guideline

range," and correctly calculated it.  <u>Id.</u> at 1055.  If the court sentenced the

defendant within that range, the defendant may rebut the presumptive

reasonableness of that sentence "by demonstrating that the sentence is

_____

[3]Indeed, much of the reasoning of <u>Armenta-Castro</u> remains relevant and applicable, even if it was decided under a mandatory Guideline system.  We still consider and interpret the Guidelines, even though they do not bind courts in reaching reasonable sentences.

-10-

unreasonable in light of the other sentencing factors laid out in § 3553(a)." Id. That is "a deferential standard." Id. at 1054.

18 U.S.C. § 3553(a) directs courts to consider various factors, including the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the particular sentence to reflect the seriousness of the offense, promote respect for the law and provide just punishment, as well as the need to provide adequate deterrence, protect the public, and provide the defendant with appropriate treatment; the types of sentences available; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Id. (a)(1)-(6). Salazar-Alpizar argues that "[s]entencing disparities based solely on the vagaries of geography, rather than on the facts of an offense or an offender's individual characteristics, are 'unwarranted,'" and result in a sentence greater than necessary to achieve the goals of sentencing set forth in § 3553(a).

The defendant in Morales-Chaires made the same argument Salazar-Alpizar does here. In that case, the district court refused to consider fast-track sentencing disparities, concluding that to do so would violate the doctrine of separation of powers. In reviewing the reasonableness of the sentence imposed, we held that we did not "need [to] resolve whether sentencing disparities caused by the existence of fast-track programs in some jurisdictions are or are not, or may be in certain circumstances, considered unwarranted under § 3553(a)(6)." Morales-

Chaires, 430 F.3d at 1131. That was because § 3553(a)(6) "is but one of several factors for a court to consider in determining a reasonable sentence." Id. We held that a consideration of all the § 3553(a) factors indicated the sentence imposed in that case was reasonable.

In this case, in calculating Salazar-Alpizar's sentence the district court did in fact consider the existence of sentencing disparities caused by fast-track programs. It concluded that those disparities did not furnish a basis for sentencing Salazar-Alpizar outside of the applicable advisory Guideline range, in view of the other relevant sentencing factors. That decision is consistent with Morales-Chaires, as well as every other circuit court decision that has addressed the matter. See United States v. Marcial-Santiago, Nos. 05-30248, 05-30249, 05-30251, 2006 WL 1215444, at *2-3 (9th Cir. May 8, 2006) ("By authorizing fast-track programs without revising the terms of § 3553(a)(6), Congress was necessarily providing that the sentencing disparities that result . . . are warranted [and] . . . [e]ven if the[se] disparit[ies] were assumed to be unwarranted, . . . that factor alone would not render Appellants' sentences unreasonable; the need to avoid unwarranted sentencing disparities is only one factor a district court is to consider in imposing a sentence."); United States v. Montes-Pineda, No. 05-4411, 2006 WL 1062154, at *4 (4th Cir. Apr. 24, 2006) ("[W]e hold that merely pointing out the existence of such [fast-track] disparities, with no reference to the characteristics of the particular defendant, does not render a within-Guidelines

-12-

sentence unreasonable."); United States v. Galicia-Cardenas, 443 F.3d 553, 555 (7th Cir. 2006) (per curiam) (reversing district court sentence imposed with a four-level downward departure because the district lacked a fast-track program, leaving to the district court's discretion "[w]hether [defendant] deserves a sentence below the advisory guideline range based on other factors"); United States v. Martinez-Martinez, 442 F.3d 539, 543 (7th Cir. 2006) (holding that any disparity between the defendant's sentence and those available or imposed in fast-track jurisdictions "was considered appropriately as a single, and not controlling, factor"); United States v. Sebastian, 436 F.3d 913, 916 (8th Cir. 2006) (holding that "the sentence disparities arising from fast-track programs [do not] make[] th[e] [defendant's] sentence unreasonable"); Martinez-Flores, 428 F.3d at 30 n.3 (stating in dicta "[i]t is arguable that even post-Booker, it would never be reasonable to depart downward based on disparities between fast-track and non-fast-track jurisdictions given Congress' clear (if implied) statement in the PROTECT Act provision that such disparities are acceptable"); United States v. Jimenez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc) (noting its dicta in Martinez-Flores, and finding that in the case before it, the defendant "had not furnished a factual basis for assessing the extent of the [fast-track] disparities or provided a reason why to take them into account[,] . . . [so] [i]n declining to alter the sentence on this ground, the district court did not act unreasonably" (citation

omitted)).  We accordingly conclude that Salazar-Alpizar's sentence was reasonable.

## CONCLUSION

For the foregoing reasons, the sentence is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge